# RICHARD H. ROSENBERG
### ATTORNEY AT LAW

217 BROADWAY  
SUITE 707  
NEW YORK, NEW YORK 10007

TEL: 212-586-3838  
FAX: 212-962-5037  
richrosenberg@msn.com

January 3, 2019

Hon. Kimba M. Wood  
United States District Court  
U. S. Courthouse  
500 Pearl Street  
New York, New York   10007

**Re: Sentencing Memorandum**  
**United States v. Stuart Manashil**  
**S8 16 Cr. 436 (KMW)**

Dear Judge Wood:

     Please accept this letter and the annexed exhibits as defendant Stuart Manashil's sentencing memorandum and respectful request for a sentence of probation. Mr. Manashil is scheduled to be sentenced on January 17, 2019.

     On March 30, 2018 Mr. Manashil pleaded guilty to a one count superceding Information charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. The plea was entered pursuant to a cooperation agreement between the parties. Mr. Manashil surrendered himself on the morning of the plea proceeding before Magistrate Judge Moses and was released on an appearance bond.

*The Offense Conduct*

     At the outset it should be noted that the offense to which Mr. Manashil pleaded guilty had nothing whatsoever to do with the overarching conspiracy committed by Messrs. Steven Brown, James Williams and Gerald Seppala with which Your Honor is familiar as their presiding and sentencing Judge.

     Mr. Manashil's offense of conviction was based on his participation in the diversion of a $23,975.00 commission fee that was earned in the years 2011 to 2014 by Mr. Manashil and rightfully due his employer, Agency-1. While not personally profiting from the diversion, Mr.

Manashil knowingly and wilfully assisted in the diversion for the benefit of Steven Brown who along with James Williams engineered false invoice documentation to facilitate the receipt and conversion of the funds which arrived in stages.

As Mr. Manashil's letter to the Court reflects, Mr. Manashil is deeply shamed by his participation in this offense and fully accepts responsibility. Although we expect restitution to be ordered jointly and severally with Brown and Williams, Mr. Manashil will make immediate and full restitution of the $23,975.00.

### *The Advisory Sentencing Guideline Range*

The Pre-Sentence Report ("PSR") arrives at a total offense level of 9. This was arrived at by adding the loss figure (more than $15,000.00 but less than $40,000.00) amounting to 4 levels added to a base level of 7. With acceptance of responsibility 2 levels are deducted resulting in a total offense level of 9. Mr. Manashil has zero criminal history points resulting in a criminal history category of 1. Accordingly, his advisory guidelines settle in Zone B with an advisory guideline sentence range of 4-10 months. (PSR¶¶ 20-35,78)

As this Court is well aware, while the sentencing guidelines provide a sentencing court with a "starting point and the initial benchmark", *Gall v. United States*, 128 S. Ct. 586 (2007), a sentencing court must now consider all of the 18 U.S.C. § 3553 (a) factors, not just the guidelines, in determining a sentence that is minimally sufficient to meet the goals of sentencing set forth in 18 U.S.C. § 3553 (a) (2). Section 3553 (a) (2) states that such purposes are:

    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B. to afford adequate deterrence to criminal conduct;
    C. to protect the public from further crimes of the defendant; and
    D. to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Additionally, under 18 U.S.C.§ 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

[REDACTED]. For that and the reasons that follow it is respectfully submitted that a sentence departure in combination with a variance based on the 18 U.S.S.G 3553 (a) factors discussed herein be granted at sentencing. In that regard, it is most respectfully submitted that a sentence of probation would be a just sentence and no more than what is necessary under the facts and circumstances of this case to serve the goals of sentencing.

***Objections and Comments to the PSR***

The defendant has previously written Probation with comments to parts of the PSR. We understand that the comments will be incorporated into the revised, final PSR which, as this is being written, has not as yet been released.

[remainder of page redacted]



### *The Defendant's Background and 18 U.S.C.§3553 (a) Factors Support a Sentence Variance*

18 U.S.C.§3553 (a) directs a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the guidelines sentencing range and policy statements; the need to avoid unwarranted sentencing disparities among similarly situated defendants; the need for the sentence imposed to provide just punishment, deterrence, and needed educational and vocational training; and the need to provide restitution to any victim(s) of the offense.

Further, under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

As the Second Circuit observed in *United States v. Jones*, 531 F.3d 163, 182 (2d Cir. 2008):
> it is the district court's particular trust to ensure the "uniform and constant" principle of the federal sentencing tradition, specifically, that "every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," [citing] *Koon v. United States*, 518 U.S. at 113.

*Jones*, at 182.

It has been observed that sentencing is not an exact science. Rather it is a "fluid and dynamic process." *Irizarry v. United States*, 553 U.S. 708, 715, 128 S. Ct. 2198, 2203 (2008) (citing *United States v. Vega-Santiago*, 519 F.3d 1, 4 (1st Cir. 2008) (*en banc*)). Its aim should be to impose a sentence that is reasonable and fair and just given the facts of a particular case and

the facts relative to the particular person being sentenced. The overarching goal is to fashion a sentence that is sufficient, but not greater than necessary. An analysis of the § 3553(a) factors in this case, to which we now turn, supports the imposition of a non-jail sentence for Mr. Manashil.

It is respectfully submitted that the defendant's offense of conviction does not define the person that he is. Stuart Manashil's position in the world of film entertainment was built from the ground up on hard work, dedication to literature and the arts and a nature that is described in the accompanying letters as "caring" "loyal", dependable, "considerate" and "devoted" to the best interests of his clients.

As these letters attest, he is a man most admired for his intellectual acumen, his great knowledge of film and literary culture and the devotion he brings to his work and clientele. Film writer and producer Simon Barrett writes that he has never witnessed Mr. Manashil to show another human being disrespect. He describes Mr. Manashil as "unfailingly kind" and that his current and former assistants speak of him in "rapturous terms" helping many of them in their career paths. Similarly, film producer Steven Schneider describes Mr. Manashil as being a critically important person in his life, both professionally and personally and remarkable for being "available, supportive, and nonjudgmental" whenever he needs "a shoulder to lean on ." Writer/director Azazel Jacobs describes Mr. Manashil as "one of the most caring people I have ever met" admired for his "ability to be plainspoken, his wealth of knowledge, and most of all, his ability to be truthful." Kiernan Fitzgerald, a screenwriter and his father Michael Fitzgerald, an independent movie producer have both written the Court to convey their great admiration of Mr. Manashil's professionalism and devotion to them and their projects.

Mr. Manashil's academic achievements are indeed impressive. His passion for film and literature propelled him to pursue a career in the film industry. In year 2000 with a Master's Degree in hand he nevertheless began at the bottom, working in the mail room of a major Hollywood talent agency. He soon moved on to another major talent agency and through hard work and dedication to his industry he worked himself up from the mailroom to become a junior agent specializing in independent films. His success at that agency led to him being recruited by one of the top talent agencies where he spent more than six years as a top earner in their literary department working with many prominent film makers. In 2014 he was recruited by William Morris Endeavor Entertainment ("WME") and made a partner of that company. In 2017 Mr. Manashil left WME to start his own company engaged in talent management and film production. Just in the last year Mr. Manashil has produced four films scheduled for distribution and he continues to manage top tier talent in the film industry.

Mr. Manashil has good relations with parents and siblings . His wife, Karina Manashil, is herself a talent agent at William Morris where they first met. As her letter relates, she was first attracted to and moved by Stuart Manashil's compassion for clients, colleagues and his business ingenuity. She considers him her bedrock, cherished for his kindness, brilliance and natural protectiveness.

Mr. Manashil's letter conveys the shame, embarrassment and great emotional pain that he has experienced with this investigation and prosecution. His toxic relationship with Steven Brown led to the threat of civil law suits in California notwithstanding that he had no complicity in the scheme to defraud investors. Then, this investigation led to the discovery of his 2012 diversion of Agency I's fee to Brown an act that he describes as "stupid, arrogant, and wrong", an exercise in "horrible" judgment and one which has engendered "incredible regret". It is hoped that Mr. Manashil's acceptance of responsibility is regarded by this Court the way he experiences it: deeply and truly heartfelt and sincere.

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████. He is a man committed to being the best person that he can be in service to an industry he so loves, to family and to society.

Mr. Manashil does not represent any threat of recidivism. Society need not be protected from him. This painful and damaging experience has provided ample individual and general deterrence if in fact such is needed..

Finally, it is befitting to note Judge Chin's words in *United States v Singh*, 877 F.3d 107 *(2d Cir. 2017)* when he stated "a sentencing judge must have some understanding of the 'diverse frailties of humankind,'" and in deciding what sentence will be sufficient, but not greater than necessary, "a sentencing judge must have a 'generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain.'" *Singh*, supra at p.121.

Based on Mr. Manashil's background and characteristics, the nature of the offense conduct ███████████████████████████████ we most respectfully ask the Court to impose a non-custodial sentence of probation for a period of one year, a sentence we submit that will be sufficient, but not greater than necessary, to achieve sentencing goals and serve the interests of justice.

Thank your for your consideration to the sentence recommendation offered herein.

Very sincerely,

Richard H. Rosenberg

cc.: All parties ( ECF)